Argued and submitted March 25, reversed July 6, 1981

## TALLMAN,
*Appellant - Cross-Respondent,*
*v.*
## FLOREN et ux,
*Respondents - Cross-Appellants.*

(No. 77-4-309, CA 17504)

630 P2d 918

Garth S. Ledwidge, Gresham, argued the cause and filed the briefs for appellant - cross-respondent.

John Dudrey, Portland, argued the cause for respondents - cross-appellants. With him on the brief was Fredrickson, Weisensee & Cox, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

This is an action for specific performance of an earnest money agreement for the sale of land included in a deferred tax program for forest land under former ORS 321.605 *et seq* (repealed 1977 Or Laws, ch 892, § 51). Plaintiff, the buyer, seeks to compel defendants, the sellers, to convey the property "free and clear of all liens and encumbrances" and to provide a marketable title, or, in the alternative, to convey with adjustments in the purchase price or method of payment to reflect the contingent liability for deferred taxes. The trial court granted specific performance of the earnest money agreement as of October 15, 1976, but did not resolve the question of the deferred taxes, which it characterized as premature. Plaintiff appeals, and defendants cross-appeal. We review *de novo.*

On August 9, 1976, plaintiff's husband and defendants executed an earnest money agreement for sale of a 19-acre parcel of land in Clackamas County. On the same day, plaintiff's husband assigned his interest to plaintiff.[1] The printed agreement contained the following provisions (typewritten language emphasized):

" * * * *Purchaser shall pay taxes when due and provide seller with evidence of such paid amounts.*"

"Unless otherwise herein provided, the property is to be conveyed free and clear of all liens and encumbrances, but subject to zoning ordinances, building and use restrictions, reservations in Federal patents, utility easements of record which benefit the premises or area in which the premises is [sic] located, and *no other exceptions.*

"The seller shall furnish in due course to the purchaser a title insurance policy in the amount of the purchase price from a title insurance company showing good and marketable title. Prior to closing the transaction, the seller, upon request, will furnish to the purchaser a preliminary title report made by a title insurance company showing the condition of the title to said property.

" * * * * *

---

[1] Defendants point out that by the terms of the agreement any assignment required their prior consent. But because defendants have not shown that plaintiff would not have been an acceptable buyer, we do not decide the case on this ground.

"Prorates of rents, taxes, interest on assumed obligations, insurance premiums (if purchaser assumes existing policy) and other prepaid expenses attributable to the property to be made as of: date purchaser is entitled to possession, [alternate provision stricken out].
" * * * * *

"Time is the essence of this agreement. Transaction to be closed on or before *15 October, 1976,* or as soon thereafter as financing documents can be prepared and marketable title delivered.
" * * * * *

"Purchaser shall pay all taxes and liens placed on the property, and have fire insurance satisfactory to seller on the property after closing date. * * *"

The preliminary title report, dated September 28, 1976, indicated that the property was specially assessed for farm use "as disclosed by the assessment and tax roll." Upon inquiry plaintiff learned the assessment was actually made for forest land, as verified by a later supplemental title report. Thus, prior to closing, plaintiff became aware that if the land became disqualified for the special forest land tax assessment program, an amount equal to the additional tax that would have been assessed against the land if it had not been in the tax deferment program for the preceding five years, plus interest, would be levied on the next tax roll.[2] Sellers had not disclosed this fact to plaintiff

---

[2] ORS 321.621 (1975) (repealed Or Laws 1977, ch 892, § 51) provided:

"(1) If land is designated as forest land as a result of an application being filed therefor under the provisions of ORS 321.617 to 321.621 and the designation is later removed, there shall be added to the tax extended against the land on the next property assessment and tax roll, to be collected and distributed in the same manner as the remainder of the real property tax, an amount equal to the sum of the following:

"(a) The total amount by which the taxes assessed against the land would have been increased if it had been valued without regard to subsection (3) of ORS 321.617 and subsection (1) of ORS 321.619 during the five years preceding such extension on the roll but without any increase for years prior to the tax year 1968-69.

"(b) Interest upon the amounts of increased tax from each year included in pargraph (a) of this subsection at the rate of six percent per annum from the dates at which such increased taxes would have been payable if the land had been valued without regard to subsection (3) of ORS 321.617 and subsection (1) of ORS 321.619.

"(c) In cases where the designation of forest land is removed as a result of a sale or transfer described in subparagraph (B) or (C) of paragraph (a) of

or her husband or to the listing broker. Likewise, neither plaintiff nor her husband had disclosed to the sellers the use intended to be made of the land. There is no evidence that the deferred taxes were within the contemplation of the parties when the earnest money agreement was executed.

On the closing date, plaintiff showed defendants a pencilled version of a land sale contract which included a provision that (1) required defendants to pay to the county any deferred taxes relating to the time prior to October 15, 1976, plus accrued interest, and (2) if sellers failed to pay such amounts, purchaser could pay them and credit the amount against the remaining contract balance. As of October 15, 1976, there were no outstanding taxes due on the property. On October 18, 1976, plaintiff's realtor presented sellers with another alternative contract which provided for an initial reduction of the contract balance by the estimated deferred tax with periodic additions made to the balance if the land remained in the deferred tax program. Defendants refused to sign either of the proposed agreements. Also on October 18, 1976, plaintiff's husband sent a letter to defendants representing that the purchaser "was ready on October 15, 1976 to close the purchase upon receiving assurance that you are in a position to provide a good and marketable title to the property." After sellers refused to accept delivery of the letter, plaintiff brought this suit for specific performance.

This case is resolved by defendants' second affirmative defense at trial and their contention on cross-appeal that the responsibility for payment of deferred taxes was a material term as to which the parties' minds failed to meet. The earnest money agreement does not expressly allocate responsiblity for payment of deferred property taxes. The contract language permits two inconsistent results with respect to deferred taxes. On the one hand, there is a *typewritten* provision that purchaser is to pay taxes when

subsection (1) of ORS 321.619, the lien for such increased taxes and interest shall attach as of the day preceding such sale or transfer.

"(2) The amount determined to be due under subsection (1) of this section may be paid to the assessor prior to the time of the next general property tax roll, pursuant to the provisions of ORS 311.370."

due. The standard language also provides that purchaser is to pay all taxes and liens placed on the property after the closing date. These provisions suggest that plaintiff here would be liable for any deferred taxes that became due after the date of closing. Any tax liability as a result of the loss of deferred status would become due after the date of closing. On the other hand, the taxes are to be prorated as of the date purchaser is entitled to possession. Arguably, this could mean that defendants would be liable for deferred taxes attributable to their period of ownership. For example, if plaintiff changed use and thereby lost tax deferred status within five years of the transfer, a portion of the deferred taxes would relate to the period of defendants' ownership and be chargeable to them. Since the earnest money agreement is subject to two contradictory readings, it should not be specifically enforced. *See Land-ura Corp. v. Schroeder,* 272 Or 644, 651, 539 P2d 150 (1975).

That the provision for deferred taxes is a material term is evidenced by plaintiff's refusal throughout the course of this litigation to accept a contract which did not deal specifically with the matter of deferred taxes. Because there had been no meeting of the minds as to that material term, it was error for the trial court to have granted specific performance of the earnest money agreement.

Reversed.